MOORE, Judge.
The City of Northport (“the City”) appeals from the judgment of the Tuscaloosa Circuit Court, which reversed the decision of the Northport Civil Service Board (“the Board”) to uphold the City’s decision to terminate the employment of Johnny Sledge. We reverse and remand.

Procedural Background

Sledge was employed by the City. On or before June 1, 2011, Sledge was working at a job site with three other employees of the City, Gary Wilder, the backhoe operator; Doug Jones, the crew chief at the job site; and Carl Eatmon.[1] Kenny Burns, the supervisor in charge of the other employees, was not at the job site. Sledge, Wilder, Jones, Eatmon, and Burns are sometimes referred to collectively as “the employees.” The City terminated all of the employees’ employment based on an incident that involved the employees’ taking scrap metal from a job site and selling it for personal profit; in order to sell the scrap metal, Sledge left the job site during working hours on at least two different occasions. The employees divided among themselves the money that was received from the sale of the scrap metal.
The employees appealed the City’s decision to the Board, and, on June 21, 2011, a hearing was held before the Board. Neither Wilder nor Sledge nor their attorneys appeared at the June 21, 2011, hearing. The Board overturned the City’s decision to terminate the employment of Eatmon and Jones, but it affirmed the City’s decision to terminate the employment of Sledge, Wilder, and Burns.
On June 30, 2011, Sledge appealed the Board’s decision to the Tuscaloosa Circuit Court (“the trial court”).[2] In his notice of appeal, Sledge asserted that the Board’s decision was improperly based on his race and a reading disability and was in retaliation for complaints previously filed by Sledge against the City with the Equal Employment Opportunity Commission; Sledge also asserted that his supervisor had given the employees the scrap metal from the job site. The City moved to strike Sledge’s allegations of discrimination and his allegation of retaliatory discharge, asserting that those matters had not been raised before the Board and, therefore, pursuant to Act No. 1225, § 19, Ala. Acts 1969, were not properly presented to the trial court.[3] The City also moved to dismiss Sledge’s appeal, asserting that he had failed to appear at the hearing before the Board.
*927 On August 15, 2011, the trial court denied the City’s motion to dismiss and remanded Sledge’s case to the Board with instructions to conduct another hearing. On October 4, 2011, after another hearing before the Board, at which Sledge and his attorney appeared, the Board voted unanimously to uphold the City’s decision to terminate Sledge’s employment. The Board’s decision was filed with the trial court on October 5, 2011. A transcript of the hearing before the Board also was submitted to the trial court.
On November 30, 2011, the trial court conducted a hearing on Sledge’s appeal. At the conclusion of that hearing, the trial court questioned whether it was to review the City’s decision to terminate Sledge’s employment or the Board’s decision to uphold the City’s decision to terminate Sledge’s employment. Sledge contended that the trial court’s decision was governed by Ala.Code 1975, § 11-44B-48, while the City contended that the trial court’s decision was governed by the Northport Civil Service Act (“the Act”), Ala. Acts 1969, Act No. 1225. The trial court requested briefs from the parties on that issue.
On May 3, 2012, the trial court entered a judgment reversing the Board’s decision to uphold the City’s termination of Sledge’s employment. The trial court indicated that it was reviewing the Board’s decision pursuant to § 11-44B-48 and stated:
“2. In reviewing the decision of the Board to uphold the termination of Johnny Sledge[,] the Court took into consideration Mr. Sledge’s major role in the events leading to his termination, his prior disciplinary record, his allegations of retaliation against the City of Northport for filing prior discrimination complaints, his having received permission to receive the pipe from his overall supervisor, Kenny Burns, and his immediate supervisor, Doug Jones, who actually contacted Kenny Burns to obtain the permission and shared in the proceeds generated by the sale of the pipes, and the Board’s decision to reduce the termination to suspension for Doug Jones.
“3. In light of the evidence, including the Board’s decision to reduce the termination of Mr. Jones to a suspension, the Court is of the opinion that the decision to uphold the termination of Mr. Sledge is arbitrary and capricious and is not supported by substantial evidence. In the Court’s view, based on the evidence and the record, the culpability of. Mr. Jones is equal to if not greater than the culpability of Mr. Sledge. This is so particularly given the testimony by the City Administrator that he held the supervisor to a higher standard than the person being supervised.
“Accordingly, the Decision to Uphold the termination of Johnny Sledge is hereby reversed and this case is remanded to the ... Board for proceedings consistent with the Judgment of this Court.”
The City moved to alter, amend, or vacate the trial court’s judgment; the trial court denied that motion. The City timely filed its notice of appeal.

Analysis

The City first contends that Sledge’s appeal to the trial court was governed by the Act and not by Ala.Code 1975, § 11-44B-48, and, thus, that the trial court reviewed the evidence under the wrong standard of review. We agree with the City.
*928 Alabama Code 1975, § 11-44B-40 et seq., establishes a personnel system that is applicable “only to Class 4 municipalities organized under Chapter 44B, and electing by ordinance within 30 days of March 15, 2006, to be subject to this article [i.e., Title 11, Chapter 44B, Article 2] and participate in the personnel system provided for in this article.” § 11-44B^40. The record contains nothing to establish that § 11-44B-40 et seq. is applicable to the City.
The City asserts that it is a Class 7 municipality, not a Class 4 municipality. See Ala.Code 1975, § 11-40-12 (establishing 8 classifications of municipalities based on population and specifying that Class 4 municipalities include “[a]ll cities with a population of not less than 50,000 and not more than 99,999 inhabitants”). Although the City did not make that assertion until it filed its postjudgment motion, the City’s failure to make that assertion earlier in the proceedings below did not justify the trial court’s application of § 11-44B-48 without some evidence indicating that the City met the eligibility requirements of § 11-44B-40 et seq.
Even assuming that the City is a Class 4 municipality, the record contains nothing to indicate that it ever elected to be subject to § 11-44B-40 et seq. and to participate in the personnel system established in those Code provisions. Such an election is an express requirement for the application of § 11-44B-40 et seq. We, therefore, agree with the City that the record before the trial court failed to demonstrate that § 11-44B-40 et seq. was applicable to Sledge’s appeal.
Conversely, the preamble to the Act indicates that its purpose is to “establish a Civil Service System for the City of North-port.” Among other things, that Act establishes a personnel board, i.e., the Board; divides the City’s employees into “exempt” and “classified” status; specifies the duties of the Board; specifies a method for filling vacant jobs with the City; addresses disciplinary actions to be taken against City employees, including suspensions, demotions, and dismissals; and authorizes the Board to review decisions of the City regarding employee discipline. Thus, it cannot be disputed that the Act applies to and governs Sledge’s appeal relating to the termination of his employment with the City.
In his brief to this court, Sledge acknowledges that the trial court erred in applying § 11-44B-48 to his appeal. He asserts, however, that that error was harmless. We disagree.
Section 19 of the Act, which establishes a method by which the City or employees of the City may appeal from adverse decisions of the Board, provides, in pertinent part:
“The employee, the appointing authority, or the city may, within ten (10) days after the decision of the board is rendered, appeal to the [Tuscaloosa Circuit Court] from any decision of the board.... by filing notice of such appeal with the court and causing a copy of such notice to be served on the appointing authority and any member of the board. Upon the filing of such notice, the board shall file with the court a certified transcript of the proceeding had before it with respect to the appeal, and its decision in the matter. The appeal shall be heard at the earliest possible date by the court sitting without a jury on the issues made before the board and the trial in the court shall be de novo.”
(Emphasis added.) Thus, the Act provides for a de novo review on appeal.
Alternatively, § ll-44B-8(f), Ala. Code 1975, which specifies the means by which a party may appeal to the circuit *929 court from decisions of a personnel board created pursuant to § 11-44B-40 et seq., provides, in pertinent part:
“Review by the court shall be without a jury and confined to the record, including a transcript of the evidence. The court, upon the terms and conditions it deems proper, at any time before the hearing of the petition, may permit the taking of additional evidence before the board and allow modification of the findings and final decision of the board. The court upon a hearing of the petition, shall have power to affirm or reverse and render the decision of the board or reverse and remand the matter to the board for further proceedings consistent with the judgment of the court. The court shall affirm the decision of the board unless it finds that the substantial rights of the petitioner have been prejudiced because the final decision of the board was any of the following:
“(1) Unsupported by substantial evidence in the record submitted.
“(2) In excess of the authority conferred by this article on the board.
“(3) Violative of constitutional provisions.
“(4) Arbitrary or capricious.”
(Emphasis added.) Thus, in an appeal filed pursuant to § 11-44B-48, the trial court’s standard of review is similar to that applicable to a petition for the common-law writ of certiorari.
In Hallman v. City of Northport, 333 So.2d 152 (Ala.Civ.App.1976), this court addressed the de novo trial specified in the Act and distinguished it from the type of review allowed under § 11-44B-48. In Hallman, this court considered whether a Northport city ordinance had improperly attempted to modify the de novo trial specified in the Act; the ordinance at issue in Hallman provided that “ ‘[rjeview by the court shall be without a jury and be confined to the record, and to a determination of the questions of law presented; the Board’s findings of fact shall be final and conclusive.’ ” Hallman, 333 So.2d at 154. This court stated:
“Section 19 [of the Act] directed a de novo trial upon appeal to the Circuit Court. In the absence of terms of qualification, the meaning of trial de novo is well established by decisions of the appellate courts of this state. Smith v. Civil Service Board of City of Florence, 52 Ala.App. 44, [48,] 289 So.2d 614[, 616 (1974) ]. In that case we said:
“ ‘A true de novo hearing of a matter decided by an inferior court or administrative agency is tried and determined as if no other proceedings had ever taken place. It is a trial anew; a brand new proceeding, as if such proceeding had been commenced in the reviewing court from the start. Ball v. Jones, 272 Ala. 305, 132 So.2d 120 [ (1961) ].’
“There are no qualifying terms limiting the defined meaning of ‘de novo’ in Section 19. It is noticed that it is provided that the Board shall file with the court a certified transcript of the proceeding had before it and its decision. It is also noticed that the court is directed to hear the appeal on the issues made before the Board. However, these provisions are followed with the command that ‘the trial in the court shall be de novo.’ The directions of the rule effectively remove the right to a trial de novo.
“The adopted rule clearly eliminates the accepted meaning of de novo. The rule turns ‘trial de novo’ into a review by common law certiorari. Tarver v. Household Finance Corporation, 45 Ala. App. 344, [346,] 230 So.2d 534[, 535 (1970) ]. It is therefore inconsistent with the Act and is void.
*930 “The rule being without effect, it follows that the acceptance, over objections, of the transcript of the proceedings before the Board, together with the Board’s decision was error. Such tran- . script could not supply evidence of a prima facie case in a trial de novo when objected to by Hallman. Being illegally before the court, the transcript could not support a judgment.
“We are unable to discern the purpose of the Act directing the filing of the transcript of the proceedings before the Board and its decision in the circuit court on appeal, unless it was intended to be used to determine the issues to be tried. The Act does not contain directions as to how the transcript may be used.... The uncertainty of the Act in respect to the purpose of filing the transcript on appeal does not affect the clearly stated right to a trial de novo.”
Hallman, 338 So.2d at 154.
Typically this court finds that the trial court’s application of a more stringent standard does not amount to reversible error. See Rehfeld v. Roth, 885 So.2d 791, 795 (Ala.Civ.App.2004) (stating that any error in applying the Ex parte McLendon, 455 So.2d 863 (Ala.1984), standard to a custody-modification petition was harmless error because the trial court’s determination that the petitioner had satisfied the McLendon standard necessarily meant that the petitioner had met the less stringent best-interests standard); and I.M. v. J.P.F., 668 So.2d 843', 845 (Ala.Civ.App. 1995) (noting that “the trial court applied the McLendon standard ... rather than the ‘best interest’ standard, but because the McLendon standard is more stringent, the trial court’s error in that regard is harmless”). In this case, however, the trial court indicated on the record that if it considered the evidence under the Act it would reach a different result than if it considered the evidence under § 11-44B-48. Therefore, we cannot agree with Sledge that the trial court's error in relying on § 11-44B^48 was necessarily harmless. Accordingly, we reverse the trial court’s judgment and remand the cause for it to reconsider the evidence in light of the standards established by the Act.
Because of our resolution of the above issue, we pretermit consideration of the City’s other issues. On remand, the trial court should consider under the appropriate standards only the evidence presented at the de novo hearing it conducted. Hall-man, supra.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, J., concurs.
THOMPSON, P.J., concurs in the result, without writing.
THOMAS, J., concurs in the result, with writing.
DONALDSON, J., recuses himself.

. The record does not indicate the specific date on which the conduct made the basis of this appeal occurred.

. Wilder also appealed to the circuit court, but his appeal was assigned to a different judge.

. The City also asserted that Sledge’s allegations of race and disability discrimination as well as retaliation by the City were the subject of litigation pending in the United States District Court for the Northern District of Alabama. Additionally, the record also reflects that, on July 25, 2011, Sledge was awarded unemployment-compensation benefits based on the City’s termination of his employment. The hearing officer for the Alabama Department of Industrial Relations (now known as the Alabama Department of Labor) determined that, because Sledge had taken the scrap metal with the permission of his supervisor, he had not acted dishonestly or engaged in criminal conduct and, thus, was not precluded from receiving unemployment-compensation benefits.